668 So.2d 1156 (1996)
SECURITY CENTER PROTECTION SERVICES, INC.
v.
LAFAYETTE SECURITY & ELECTRONIC SYSTEMS, INC. and Cliff Northon.
No. 95-CA-693.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1996.
Writ Denied March 29, 1996.
*1157 Kathleen F. Ketchum, New Orleans, for Plaintiff/Appellant.
Jerald L. Album and Suzanne M. Ganucheau, New Orleans, for Defendants/Appellees.
Before WICKER and CANNELLA, JJ., and REMY CHIASSON, J. Pro Tem.
WICKER, Judge.
This is a suit by Security Center Protection Services, Inc. against Lafayette Security & Electronic Systems, Inc. and Cliff Northon, president of Lafayette, on open account and for breach of a security monitoring contract. The suit also included a claim against *1158 Northon individually for payment of a promissory note. Security appeals from summary judgment dismissing its breach of contract claim. We reverse and render judgment in favor of Security.
Security's petition made the following allegations: Lafayette and Northon were engaged in the security system business, but wished to transfer the monitoring segment of that business to Security. The parties entered into an agreement which provided for transfer of Lafayette's monitoring accounts to Security and also provided that Security would maintain those accounts for a period of not less than 36 months, beginning on September 1, 1992. On February 28, 1993, Lafayette notified Security in writing that it wanted specific accounts deleted effective that date. The accounts specified constituted all 971 accounts that Lafayette had placed online with Security.
Security alleged that Lafayette's action caused it damages in the amount of $140,587.50 (the total payments Security could have earned from the accounts for the remaining 30 months of the contract), plus interest. In addition, Security alleged Lafayette was liable to it on open account in the amount of $32,970.12 for sums previously billed but unpaid. Cliff Northon was alleged to be liable to Security under a promissory note which obligated him personally to pay $8,991.38 in installments over a six-month period.
The agreement between the parties was as follows, in pertinent part:
This MONITORING SERVICE AGREEMENT (the "Agreement") * * * effective as of the 1st day of September, 1992 is made by and between The Security Center Protection Services, Inc. ("SCPS") and Lafayette Security & Electronics ("LSE") (collectively "the parties").
WHEREAS, SCPS is in the business of monitoring security systems. LSE is also in the security system business and hold accounts of persons who wish to have their security systems monitored.
WHEREAS, it is the intention of the parties that SCPS will provide monitoring services on a monthly basis, and "LSE" will place all of its accounts with SCPS for the purpose of monitoring, subject to the following conditions:
NOW THEREFORE, the parties agree as follows:
1.
The term of this agreement is 36 months, starting from the effective date of the agreement.
2.
As of the effective date of this Agreement, LSE will provide SCPS with a written list of no fewer than 735 accounts to be monitored. Thereafter, SCPS will monitor the entire list of accounts supplied to it by LSE. LSE will pay for the monitoring of each account on a monthly basis and within 30 days of the date of invoice. * * *
3.
At the end of the 36 month term of this agreement, provided all terms and conditions binding on LSE have been met, LSE will be entitled to receive a bonus of 5% of all monies paid by LSE pursuant to this agreement. This bonus shall only be due and payable if LSE has maintained no fewer than 735 accounts per month on line during the entire 36 month term of this agreement. It is understood that this bonus provision does not constitute a liquidated damages clause.

* * * * * *
Prior to signing this agreement, Security had been monitoring Lafayette's accounts for over a year on a month-by-month basis.
The parties filed cross-motions for partial summary judgment on the breach of contract claim. Security contended it was entitled to summary judgment because the term of the agreement clearly was 36 months and Lafayette had violated that term by withdrawing all its accounts after less than six months. Lafayette contended the Monitoring Service Agreement was merely a rebate agreement that was accessory to the parties' unwritten month-by-month arrangement and that did not bind Lafayette to maintain its monitoring accounts with Security for three years. The *1159 trial court granted partial summary judgment in favor of defendants and plaintiff applied for writs.
We granted writs and ruled that partial summary judgment had been improperly granted because the issues in the case were so inextricably intertwined that the breach of contract claim should be referred to the merits. We remanded the matter for further proceedings. Security Center Protection Services, Inc. v. Lafayette Security & Electronic Systems, Inc. and Cliff Northon, No. 95-C-239 (La.App. 5th Cir. 4/18/95).
After remand the matter was tried on May 25, 1995. Due to payment of the promissory note and to a stipulation between the parties on the open account demand, only the claim for breach of contract remained at issue. Plaintiff urged a motion in limine to prevent admission of parole evidence regarding the agreement. Defendant Lafayette reurged its previous motion for summary judgment. No evidence was introduced; the parties relied on the documents in the record from the prior motions for summary judgment.
The trial court rendered judgment which granted plaintiff's motion in limine, but also granted defendants' motion for summary judgment and dismissed the claim for breach of contract. The court gave no reasons for judgment.
Security appeals, contending summary judgment was improperly granted because the terms of the agreement are clear: (1) the length of the agreement was 36 months; (2) Lafayette was to keep 735 accounts on line and pay for each account monthly; (3) Security was to monitor the accounts at a price specified in a price list attached to the contract; (4) Lafayette was to receive a five percent rebate at the end of the 36-month term if the terms and conditions had been met; and (5) the bonus provision did not constitute a liquidated damages clause. Because Lafayette withdrew all its accounts prior to the end of the 36 months, Security contends it is entitled to recover as damages the money it would have earned under the contract, plus interest. Security seeks reversal of the summary judgment and asks this court either to render judgment in its favor in the amount of $140,587.50 or to remand the action for trial on the question of damages.
In response, Lafayette contends the agreement was not a contract binding Lafayette to hold its accounts on line with Security for 36 months, but instead was simply a "memorialization" of a rebate agreement under which Lafayette was to receive a bonus of five percent of the monies it paid under the agreement to Security if it maintained its accounts with Security for 36 months. Lafayette characterizes the Monitoring Service Agreement as an "incentive program under which Security Center encouraged its alarm dealers to remain with it and which would result in an ultimate decrease in charges to the alarm dealers who qualified for the rebate at the end of a specified term." Defendant argues that the bonus or incentive program is accessory to the agreement that Security would provide monthly monitoring services to Lafayette.
In the event we determine the trial court erred in granting summary judgment, Lafayette asks alternatively that we rule the trial court erred in excluding parol evidence and remand for admission of parol evidence of the circumstances surrounding the signing of the contract. Lafayette argues that if this Court determines the contract is ambiguous, any unclear and ambiguous terms must be construed against Security, as the party which drafted the contract.
In support of its original motion for partial summary judgment Lafayette attached copies of Security's petition, a letter from Security dated November 24, 1992 to Security's alarm dealers explaining the monitoring agreement, and the agreement itself.
The law regarding interpretation of contracts was neatly set forth in Carter v. BRMAP, 591 So.2d 1184, 1187-1188 (La.App. 1 Cir.1991):
Contracts have the effect of law on the parties thereto and must be performed in good faith. La.C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation *1160 may be made in search of the intent of the parties. La.C.C. art. 2046. Conversely, when the terms of a contract are susceptible to more than one interpretation, it is ambiguous and parol evidence may be used to show the true intent of the parties and various rules of interpretation become applicable. [Emphasis in original.] La. C.C. arts. 2045 et seq.; Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La.C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. La.C.C. art. 2057. See Myers v. Myers, 532 So.2d 490 (La.App. 1st Cir. 1988).
Motions for summary judgment are designed to decide questions of law where there are no disputed issues of material fact. La.Code Civ.P. art. 966. The determination of whether a contract is ambiguous is a question of law. Carter v. BRMAP, supra, at 1188; Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989). Thus, on a motion for summary judgment the court may determine as a matter of law whether a contract is ambiguous. Obviously the trial judge in this matter concluded the contract was unambiguous and that it supported defendants' version of its interpretation.
We agree the contract in this case can be interpreted from its four corners, without extrinsic evidence. See Horton v. Mobley, 578 So.2d 977 (La.App. 2nd Cir. 1991), writ denied, 582 So.2d 1310 (La.1991). As stated by the supreme court in Barrera v. Ciolino, 92-2844 (La. 5/5/94), 636 So.2d 218, 223-224: "We note the command of former La.Civ.Code art. 1945(3), reiterated in the present La.Civ.Code art. 2046, that `the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.' Courts may not disregard a clear and explicit clause of a contract. * * * And parol is not admissible to alter the clear and explicit contract terms. * * *"
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. * * * The aim of contract interpretation is the discernment of a compatible meaning to all provisions of an agreement. * * * Louisiana contracts are to be interpreted in light of the common intent of the parties, and in light of all of the provisions, so that each provision is given the meaning suggested by the contract as a whole. * * * In ascertaining the common intentions of the parties to the contract, recourse must first be obtained by construing the contract or agreement as a whole; if that process is not determinative, then the next subject of inquiry is the discernment of the circumstances surrounding the parties at the time of contracting. * * * Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. * * *
Investors Associates, Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La.App. 3 *1161 Cir.1987), writ denied, 502 So.2d 116 (La. 1987).
Applying these principles to the document before us, we find the contract is clear and explicit and there is no need for extrinsic evidence. The most important language for our purposes is in the third paragraph, which states: "[I]t is the intention of the parties that SCPS will provide monitoring services on a monthly basis, and `LSE' will place all of its accounts with SCPS for the purpose of monitoring.... [Emphasis added.]"
Lafayette argues the language stating that Security will provide its services "on a monthly basis" indicates the Monitoring Service Agreement is merely ancillary to the monthly monitoring services which were already being provided by Security to Lafayette. Lafayette ignores the language that follows, which states that Lafayette "will place all of its accounts with SCPS for the purpose of monitoring."
Interpreting the language of the contract so as to give meaning to each provision of the contract, we find no ambiguity in these clauses. The phrase "monthly basis" we interprete as meaning that Security was to bill Lafayette for its services monthly. We arrive at that conclusion by referring to Condition No. 2 of the contract, which states that "LSE will pay for the monitoring of each account on a monthly basis." This interpretation gives meaning to "monthly basis" without relying on sources outside the contract.
Further, regardless of the method of payment whether weekly, monthly, quarterly or annuallyunder Condition No. 1 the agreement was for 36 months, and that is how long Lafayette was required to "place all of its accounts with SCPS for the purpose of monitoring."
To rule otherwise would render other phrases in the agreement nugatory: specifically, the sentence requiring Lafayette to place all its accounts with Security and also Condition No. 3, which states that "provided all terms and conditions binding on LSE have been met" Lafayette would be entitled to a bonus, but that the bonus provision does not constitute a liquidated damages clause.
To view the agreement as purely accessory to the pre-existing month-to-month arrangement would make much of the agreement meaningless. The main purpose of the contract was the monitoring of Lafayette's accounts. The parties agreed to do business together for three years. Security obligated itself to monitor Lafayette's accounts for three years, while Lafayette in turn obligated itself to pay to have those accounts monitored in accordance with the fixed price schedule attached to the agreement. The rebate portion of the agreement was an accessory to the parties' main obligations, which were to monitor accounts (Security) and to place accounts for monitoring (Lafayette). It was not accessory to any month-to-month oral contract.
Thus, we find the trial court erred as a matter of law in granting summary judgment in favor of defendants and we reverse the summary judgment. As stated above, we agree with the court's ruling that parol evidence should be excluded, since the contract can be interpreted without extrinsic evidence. Because the issue of damages was not addressed at the trial we do not render judgment, but instead remand the matter for further proceedings.
For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.
REVERSED AND REMANDED.