960 So.2d 931 (2007)
Pauline Arnell Beck BROWN, Russell Brown, Carla Stribling, Crystal Beck Young, Keithon Beck
v.
Richard SANDERS, M.D.; Pamela Egan.
No. 2006 CW 1171.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*932 Craig J. Robichaux, Mandeville, for Respondent-Appellee John W. deGravelles.
Bruce A. Miller, Metairie, for Defendant-Appellant Pamela Egan.
Before: KUHN, GAIDRY, and WELCH, JJ.
*933 WELCH, J.
Pamela Egan, a nurse practitioner and a named defendant in this medical malpractice action, appeals a judgment that denied her motion for sanctions, alleging that counsel for the plaintiffs, John W. deGravelles, violated La. C.C.P. art. 863(D) by failing to make reasonable inquiry regarding her liability prior to filing the petition naming her as a defendant; and that as a direct result of that action, she was terminated from her job, and suffered loss of income and damage to her personal and professional autonomy and reputation. For the reasons stated herein, we convert the appeal to an application for supervisory writs, grant the writ, and affirm the trial court judgment denying the motion for sanctions.

APPEALABILITY OF JUDGMENT
At the outset, the denial of a motion for sanctions is an interlocutory judgment; it does not determine the merits of the case. La. C.C.P. art. 1841.[1] The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. See La. C.C.P. arts.2087 and 2201. However, pursuant to our authority to exercise our supervisory jurisdiction and in the interest of judicial economy and efficiency, we convert the appeal of this interlocutory judgment to an application for supervisory writs. See Armelise Planting Company v. Liberty Oil and Gas Corporation, BP, XXXX-XXXX, p. 3 (La.App. 1st Cir.6/9/06), 938 So.2d 178, 179.

ACTION OF THE TRIAL COURT
The trial court denied Ms. Egan's motion for sanctions, finding that Mr. deGravelles "made reasonable inquiry within a reasonable period of time and took appropriate action to withdraw from this litigation within a reasonable period of time" and, therefore, did not violate Article 863.

STANDARD OF REVIEW
A trial court's factual determination of whether a party violated La. C.C.P. art. 863, which authorizes the imposition of sanctions based on the signing and certification of pleadings, is reviewed on appeal pursuant to the manifest error or clearly wrong standard. Lafourche Parish Council v. Breaux, XXXX-XXXX, p. 5 (La.App. 1st Cir.5/9/03), 845 So.2d 645, 648.

TIMELINESS OF MOTION
The original petition for damages asserting medical malpractice and naming Ms. Egan as a defendant, on which Ms. Egan's motion for sanctions is based, was filed on February 27, 2003. On October 7, 2003, the trial court granted Mr. deGravelles' ex parte motion to withdraw as counsel for the plaintiffs. On January 9, 2004, Ms. Egan filed a motion for summary judgment, which was granted dismissing all claims against her on March 19, 2004. The motion for sanctions underlying this writ was not filed until June 28, 2005, more than two years after the filing of the offending petition and fifteen months after the judgment dismissing Ms. Egan from the suit. Defendant-in-rule filed an exception raising the objection of prescription which was not ruled on by the trial court; after denying the motion for sanctions on the merits, the trial court rendered the exception moot. Although we question the timeliness of the motion, we find the trial court's ruling on the merits indeed moots the issue of timeliness.[2] Therefore, it is *934 unnecessary to resolve this issue and more appropriate to address the ruling on the merits and dispose of the ultimate issue regarding the trial court's refusal to impose sanctions.

LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 863
Louisiana Code of Civil Procedure article 863 authorizes a court to impose sanctions upon an attorney (or a represented party) who signs pleadings without making an objective reasonable inquiry into the facts and the law. See Cavin v. Harris Chevrolet, Inc., 95-1878, p. 6 (La.App. 1st Cir.5/10/96), 673 So.2d 654, 658. Louisiana Code of Civil Procedure article 863 provides in pertinent part:
B. . . . the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law . . . and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.
. . . .
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification . . . an appropriate sanction. . . .
(Emphasis added).

ANALYSIS
Louisiana Code of Civil Procedure article 863 has no express "bright line" requirements for the timeliness nor the extent of the investigation necessary for compliance with the article. The Article does require that the sanctions be imposed only after a hearing at which any party or his counsel can present evidence or argument relative to the issues. La. C.C.P. art. 863(E). Moreover, borrowing from the federal jurisprudence interpreting Rule 11, our courts consistently hold that Article 863 sanctions are not to be imposed simply because parties disagree as to the correct resolution of a matter in litigation, and its use is intended only for exceptional circumstances. Sanchez v. Liberty Lloyds, 95-0956 (La.App. 1st Cir.4/4/96), 672 So.2d 268, 272, writ denied, 96-1123 (La.6/7/96), 674 So.2d 972 (citing Gaiardo v. Ethyl Corporation, 835 F.2d 479, 483 (3rd Cir.1987)). (Emphasis added). The trial court should avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was filed. Id. (Emphasis added).
Article 863 seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law. Lafourche Parish Council v. Breaux, XXXX-XXXX, p. 5 (La.App. 1st Cir.5/9/03), 845 So.2d 645, 648. For an attorney, who owes *935 professional and ethical considerations pursuant to Article 863, and at the same time has the duty of due diligence and timeliness to his clients, this often creates a delicate balance, warranting a case-by-case consideration of the particular facts and circumstances present in each case.
Our jurisprudence provides some guidance by establishing certain factors that are appropriate to consider in determining whether there has been sufficient compliance with the dictates of Article 863. Among the factors to be considered in determining whether reasonable factual inquiry has been made are:
1) The time available to the signer for investigation;
2) The extent of the attorney's reliance on his client for the factual support for the document;
3) The feasibility of a prefiling investigation;
4) Whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
5) The complexity of the factual and legal issues; and
6) The extent to which development of the factual circumstances underlying the claim requires discovery.
Sanchez, 672 So.2d at 272 (citing Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506, 510 (La.App. 4th Cir. 1991)).
The factors for determining whether reasonable legal inquiry was made include:
1) The time available to the attorney to prepare the document;
2) The plausibility of the legal view contained in the document;
3) The pro se status of the litigant;
4) The complexity of the legal and factual issues raised.
Sanchez, 672 So.2d at 272 (citing Loyola, 580 So.2d at 510).

Pertinent Chronology and Factual Circumstances
The facts and circumstances related to the filing of the petition as revealed by the record can be summarized as follows: On October 24, 2002, Carla Stribling, the daughter of Pauline Brown, who was terminally ill with lung cancer, contacted Mr. deGravelles' office to discuss the potential of a medical malpractice action against various healthcare providers for the failure to diagnosis her mother's lung cancer. Ms. Stribling related that since approximately February of 2002, her mother sought treatment for complaints and symptoms possibly related to lung cancer, but the healthcare providers she saw during this time failed to properly diagnose the cancer. Ms. Stribling spoke by phone with Mr. deGravelles' paralegal, who generated an intake memorandum. Ms. Stribling called Mr. deGravelles' office again on November 5, 2002. She was told to schedule an appointment to meet with Mr. deGravelles and to gather all medical records from her mother's providers during the time she was treated for cancer-related symptoms and to bring whatever records she could gather when she came for her appointment.
Mr. deGravelles met with Ms. Stribling on December 27, 2002; Mrs. Brown was too ill to attend the meeting with Mr. deGravelles. Ms. Stribling gave Mr. deGravelles a more detailed history of her mother's medical treatment, including the names of the various health providers, including Ms. Egan, whom Mrs. Brown had seen, and the time periods during which she sought treatment for symptoms allegedly related to the later diagnosed cancer. Based on the information provided, Mr. deGravelles "calendared" a prescription *936 date of March 1, 2003, and alerted Ms. Stribling to the dangers of the one-year prescriptive period. He also provided Ms. Stribling with an attorney-client contract for her mother and her siblings to sign in order for him to represent them. He provided Ms. Stribling with medical authorizations and instructed her to get them signed by Mrs. Brown and returned to him as quickly as possible because he was unable, based on the information provided, to determine whether there was malpractice in the failure of Mrs. Brown's healthcare providers to diagnose cancer. He told Ms. Stribling that until he received all of the medical records, he would be unable to have the records and potential claim reviewed by a qualified consultant to determine the viability of such claim.
On January 15, 2003, Mr. deGravelles received the attorney/client contract signed by Ms. Stribling and her brother, Keithon Beck.[3] Because he still had not received any of Mrs. Brown's medical records, Mr. deGravelles sent her a letter on February 3, 2003, re-urging the significance of the prescription date and the importance of getting the medical authorizations and medical records to him that week. He finally received the medical authorizations; and on February 18 and 20, 2003, he sent requests for medical records to Mrs. Brown's healthcare providers.
Before all of the records were received, but in order to protect the case against prescription, Mr. deGravelles filed a Petition for damages on behalf of Mrs. Brown and her children against Ms. Egan and Dr. Sanders, under whose supervision she practiced, on February 27, 2003, three days before his estimated prescription date.[4]
On May 13 and 19, 2003, Mr. deGravelles sent Mrs. Brown's medical records and films to Dr. Lilian F. Pliner, an oncologist, for her review and expert medical opinion.[5] On July 16, 2003, he received Dr. Pliner's report in which she opined that there was no breach of the standard of care in the diagnosis of cancer in Mrs. Brown. Shortly thereafter, Mr. deGravelles met with Mrs. Brown's family and advised them of Dr. Pliner's report and that they would be unable to establish a breach of the standard of care. He told them that based on those findings, he wished to withdraw from the case, and that the decision to dismiss the suit or seek other counsel was theirs. They indicated they wished to seek other counsel. Mr. deGravelles then filed a motion to withdraw as counsel for the plaintiffs, which was granted and signed on October 7, 2003.[6]

APPLICATION OF LAW
In denying Ms. Egan's motion for sanctions against Mr. deGravelles, the trial court noted the following:
The crux of the issue before the Court is whether or not the filing of the petition by John deGravelles after consultation *937 with one of his clients, a daughter of the plaintiff, constitutes "reasonable inquiry" that the petition was "well grounded in fact." This determination has to be made, not in a vacuum, but rather taking into account the exigencies of the day to day practice of law.

In the case at bar, with prescription rapidly approaching, defendant-in-rule took reasonable steps to obtain the necessary information to make an informed decision as to whether or not to file suit. Based upon the information available at the time of the filing of the lawsuit, the lawsuit appeared to be meritorious. Thereafter, he took further steps to determine whether or not the allegations of the plaintiffs could be substantiated by the medical records. It became apparent after a review of the information received, that they could not and that in fact, no actionable negligence existed on the part of Pamela Egan.
Given the actions of the defendant-in-rule and the time frame within which those actions were taken, the Court finds that John deGravelles made reasonable inquiry within a reasonable period of time and took appropriate action to withdraw from this litigation within a reasonable period of time.
(Emphasis added).
Although the relevant jurisprudential factors were not specifically noted, our review of the record reveals that the trial court did, indeed, consider those factors and we find no manifest error in the trial court's decision finding it was reasonable for Mr. deGravelles to file the petition for damages against Ms. Egan under the facts and circumstances of this case. Without delineating each jurisprudential factor, we consider them all in our discussion below.
At the intake interview with Mrs. Brown's daughter, Mr. deGravelles was informed that among the various physicians and healthcare providers Mrs. Brown had seen during the time she exhibited cancer-related symptoms, Ms. Egan treated her in December of 2001, and in February of 2002. When he received Ms. Egan's medical records in March of 2003, he noted that in February, Mrs. Brown's primary complaint was calf pain, but she also had a chronic cough, ear pain, chest congestion, swollen lymph nodes in her neck, fever and a "productive" cough. Ms. Egan ordered an ultrasound, which ruled out a blood clot, and also ordered a chest x-ray because of the chronic cough and Mrs. Brown's history of smoking. According to an affidavit executed by Ms. Egan, the "chest x-ray revealed the possibility of a small granuloma or fibroma or composite normal shadow" and these findings suggested benign residuals of prior lung infections or pneumonia, but no indication of the possibility of lung cancer at that time. Mr. deGravelles testified that based on the history relayed to him regarding Mrs. Brown's symptoms when she saw Ms. Egan in February of 2002, he felt it prudent to consider her as a potential defendant and necessary to obtain all medical records and get a medical expert's opinion regarding the possibility of liability on any of the providers' part, including Ms. Egan's, in failing to diagnose Mrs. Brown's cancer.
The trial court found, and the record supports, that Mr. deGravelles made reasonable efforts under the circumstances to get the authorizations for the release of the medical records necessary for review by a medical expert prior to making an informed determination regarding liability. The record reveals that he met with Mrs. Brown's daughter for the first time approximately two months prior to the prescription date, at which time, based on what she told him, he felt there may be a viable cause of action in medical malpractice. Not only was he dealing with a two-month *938 period of time to investigate the claim and have the records reviewed, but he also had limited access to Mrs. Brown, who was in the terminal stages of her cancer, as well as to her family, who, understandably, gave higher priority to being at their dying mother's side than gathering her medical records. The record reveals that Mr. deGravelles took all reasonable steps possible to inform his clients about the prescription deadline and the importance of obtaining the authorizations and medical records as quickly as practical under the circumstances. When he was unable to obtain all of the medical records on time, he was faced with the choice of filing suit to interrupt prescription, or allowing an otherwise potentially viable cause of action to be lost forever (prescribe) to his clients' detriment, possibly subjecting himself to a suit in legal malpractice. Moreover, he was unable to make an informed assessment of the case before having all of the records reviewed by a medical expert. Given the complexities of the medical issues involved in a medical malpractice case, it would be imprudent for an attorney, who does not have the requisite medical expertise, to assess the viability of such an action without the aid and opinion of a medical expert. Therefore, under these circumstances, we cannot find that the trial court manifestly erred in concluding that Mr. deGravelles complied with the dictates of Article 863 when he filed and certified the petition for damages.
Also, as noted by the trial court, once he received the report from his medical oncologist expert that there did not appear to be any breach of the standard of care in the treatment given Mrs. Brown prior to her diagnosis of cancer, Mr. deGravelles promptly took the appropriate steps to withdraw from the case and allow his clients to dismiss it or seek other counsel.
In this matter, Mr. deGravelles was faced with what appeared to be a potentially viable medical malpractice action, an impending prescription date, and the practical difficulties of obtaining medical records, exacerbated by the fact that his client was terminally ill at the time. Based upon the time constraints he was under, as well as the limited amount of information he was able to procure prior to the prescription date, despite his due diligence, he was faced with the duties owed to his clients in preserving their potential cause of action, competing with the untenable option of allowing the action to prescribe based on the unavailability of the complete medical records and an informed medical opinion on the viability of the case, and ultimately subjecting himself to a suit in legal malpractice. As found by the trial court, the record supports that under these particular facts and circumstances, Mr. deGravelles acted diligently and professionally. In any event, his conduct does not rise to the level of sanctionable conduct contemplated by Article 863. See Sanchez, 672 So.2d at 273.

CONCLUSION
For all the foregoing reasons, we find the trial court did not manifestly err in denying Pamela Egan's motion for sanctions against John W. deGravelles and affirm that judgment. Costs of this appeal are assessed to Pamela Egan.
WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT AFFIRMED.
NOTES
[1] On the other hand, a judgment that imposes sanctions pursuant to La. C.C.P. art. 863 is a final judgment for purposes of appeal. See La. C.C.P. art. 1915(A)(6).
[2] The motion for sanctions may have been untimely, as it was filed over a year after the filing of the petition. See Connelly v. Lee, 96-1213, pp. 10-11 (La.App. 1st Cir.5/9/97), 699 So.2d 411, 416-17, writ denied, 97-2825 (La.1/30/98), 709 So.2d 710; see also Frazer v. Bruscato, 34-021 (La.App. 2nd Cir.11/1/00), 772 So.2d 293; General Motors Acceptance Corporation v. Charlie Bates Chevrolet-Buick, Inc., 954 F.2d 1081 (5th Cir.1992); Mellon Bank Corp. v. First Union Real Est. Equity & Mortgage, Inv., 951 F.2d 1399 (3rd Cir.1991). But as Mr. deGravelles did not seek supervisory review of the denial of his peremptory exception of prescription, we are limited to determining this matter on its merits.
[3] On February 19, 2003, Mr. deGravelles received the contract signed by Mrs. Brown, and on February 24, 2003, he received the contract signed by the remaining siblings.
[4] On this same date, Mr. deGravelles also filed a petition to establish a medical review panel naming as defendants Mrs. Brown's other healthcare providers; Ms. Egan, as nurse practitioner, was not qualified under the medical malpractice act.
[5] Mr. deGravelles does not dispute that he had all of Ms. Egan's medical records as early as the end of March, 2003; he explained that it would have been futile to send his expert examiner only partial medical records, as she would be unable to render a complete and thorough opinion until all of the records were reviewed.
[6] The record indicates that Mrs. Brown died in October 2003.