**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**17-582**


**SUCCESSION OF DINESH SHAW, M.D,**

**VERSUS**

**ALEXANDRIA INVESTMENT GROUP, LLC**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 257,131
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
D. Kent Savoie, Judges.


**WRIT GRANTED AND MADE PEREMPTORY.**

**Michael M. Meunier**
**Matthew K. Brown**
**Imtiaz A. Siddiqui**
**Sullivan, Stolier, Schulze, & Grubb LLC**
**909 Poydras Street, Suite 2600**
**New Orleans, LA 70112-1044**
**(504) 561-1044**
**COUNSEL FOR DEFENDANT/APPLICANT:**
      **Alexandria Investment Group, LLC**

**W. Alan Pesnell**
**The Pesnell Law Firm**
**P. O. Box 1794**
**Shreveport, LA 71166-1794**
**(318) 226-5577**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
      **Succession of Dinesh Shaw, M.D.**

**William M. Ford**
**Attorney at Law**
**P. O. Box 12424**
**Alexandria, LA 71315-2424**
**(318) 442-8899**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
      **Succession of Dinesh Shaw, M.D.**

**Jimmy Roy Faircloth, Jr.**
**Barbara Bell Melton**
**Faircloth, Melton, & Sobel, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR INTERVENOR/RESPONDENT:**
      **Red River Bank**

**SAVOIE, Judge.**

Defendant-Relator, Alexandria Investment Group, LLC (Company), seeks supervisory writ from the judgment of the trial court, granting the motion in limine filed by plaintiff, Succession of Dinesh Shaw, M.D.

This suit was brought by plaintiff to compel Relator's compliance with its Operating Agreement to buy the ownership interest of its deceased member, Dr. Dinesh Shaw (Dr. Shaw),[1] at the "Death Purchase Price" set forth in provision 10.3.1 (emphasis added), which provides, in part:

> If a Member dies, then the Company shall purchase the Ownership Interest of the deceased Member for the Death Purchase Price (defined below). As used in this Section 10.3, the term "Death Purchase Price" shall mean *the appraised value of the Company's* multiplied by the Ownership Interest percentage of the deceased Member.

On March 23, 2017, plaintiff filed its motion in limine, requesting the court "exclude any and all references to [] evidence, testimony and argument relating to the valuation of decedent's 'membership interest,' and to limit the testimony, evidence, and argument to the contractually agreed upon method of valuation defined in the Operating Agreement." Plaintiff argued that the contractually agreed upon valuation method for the "Death Purchase Price" is the "appraised value of the Company's [assets] multiplied by the Ownership Interest of the deceased Member." In its interpretation, *i.e.*, its insertion of the word "assets," plaintiff looked to "each and every other provision in the Operation Agreement calling for a valuation and purchase of a person's membership interest" in the context of retirement (10.5.1), involuntary termination (10.6.2), and bankruptcy

---

[1] At the time of his passing, Dr. Shaw was "a direct owner of a 15 2/7th % [minority] interest in and to" the Company, which owned and operated a hotel and a convention center located at 2225 North MacArthur Drive and 2301 North MacArthur Drive, respectively.

(10.2.3), and in each instance, the formula consisted of "the appraised value of the Company's assets . . . multiplied by the Ownership Interest" of the withdrawing member.[2]

Relator opposed the motion, arguing: (1) the language of the Operating Agreement specifically calls for the value of the Company, not its assets; (2) testimony regarding the value of the Company and related matters is essential to insure that any payment to Dr. Shaw of a final distribution under the Operating Agreement is in accordance with law; (3) the proposed testimony is relevant under the default provision of our LLC law, which states that payment is based on the fair market value of the Company; and (4) evidence regarding the financial condition of the Company is even relied upon by plaintiff's appraisal expert and, thus, is relevant. Under Relator's reading of the contract, the members intentionally omitted the word "assets" and agreed to calculate the "Death Purchase Price" based on the value of the Company as a whole; therefore, the apostrophe "s" was merely a typographical error.

On April 24, 2017, the trial court heard the motion and ruled from the bench:

_____

[2] Section 10.5.1 (emphasis added) provided:

> Upon retirement or withdrawal, a retiring or withdrawing Member shall be entitled to receive such distributions, if any, to which such Member is then entitled under this Agreement, an amount equal to the *appraised value of the Company's assets* as of the Retirement Effective Date multiplied by the Ownership Interest percentage of the retiring or withdrawing Member (the "Retirement Price").

Section 10.6.2 (emphasis added) provided:

> Upon involuntary termination, a terminated Member shall be entitled to receive such distributions, if any, to which such Member is then entitled under this Agreement, and an amount equal to the *appraised value of the Company's assets* as of the Retirement Effective Date multiplied by one-half of the Ownership Interest Percentage of such Member (the "Termination Price").

Section 10.2.3 (emphasis added) provided:

> As used in this Section 10.2, the term "Bankruptcy Purchase Price" shall mean the lower of *the appraised value or the net book value of the Company's assets* on an accrual basis exclusive of accounts receivable multiplied by the Ownership Interest percentage of the Bankrupt Member.

2

The motion in limine before me deals with the operating agreement signed by all the doctors plus the late Dr. Shaw. The death of a member section . . . ten point three point one deals with the term death purchase price shall be appraised value of the company's multiplied by the ownership interest of the deceased member. That paragraph then continues with the paragraph ten point five with the retirement and ten point six with involuntary termination, more or less has the same words but for the word assets. The court is going to grant the motion in limine. I believe the operating agreement has the words in it that set forth the intent of the parties when they signed the agreement that they were going to abide by what the agreement called for. Even though the word assets is not there, it does provide enough with the other paragraphs that the terms of the operating agreement are clear and they control what the determination and what amount the member is supposed to receive. And this is what the parties agreed to when they signed the agreement. So, the motion in limine to exclude the evidence outside of that will be granted.

Relator now seeks review of the trial court's written order, granting the motion, and requests expedited consideration, preferably by July 17, as this matter is set for trial on August 2-3, 2017, as a second setting, and, if not heard then, as a first setting on August 31 and September 1, 2017.

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933 (citing La.Code Civ.P. arts. 2087 and 2201). A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. When the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981).

Under La.Code Evid. art. 402, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." Pursuant to this scheme, "the normal criterion for the admissibility of evidence is simply that it be relevant." La.Code Evid. art. 402, comment (c). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. A party may seek a pre-trial ruling on the admissibility of evidence through the use of a motion in limine. Because this motion presents an evidentiary issue, the trial court is granted great discretion, and its ruling should not be disturbed absent a showing of a clear abuse of discretion. *Heller v. Nobel Ins. Group*, 00-261 (La. 2/2/00), 753 So.2d 841.

"Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and courts must enforce the contract as written. In such circumstances, the question of contractual interpretation is answered purely as a matter of law, as is the determination of whether a contract is ambiguous or not. *Sims v. Mulhearn Funeral Home, Inc.*, 07-54 (La. 5/22/07), 956 So.2d 583. "However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact." *LFI Fort Pierce, Inc. v. Acme Steel Bldgs., Inc.*, 16-71, p. 7 (La.App. 3 Cir. 8/17/16), 200 So.3d 939, 946, *writ denied*, 16-1684 (La. 11/29/16), 210 So.3d 804. Ambiguity as to intent arises when the contract lacks a provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty

4

or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So.2d 69.

Relator asserts the trial court erred by ruling on a motion in limine that determined the meaning of an ambiguous provision of the Operating Agreement, specifically its interpretation of the grammatically incorrect "Company's," without permitting or considering evidence that would clarify the ambiguity. In reaching its decision, the trial court, according to Relator, endeavored to interpret the contract as well as the intent of the parties, ultimately concluding that the word "assets" was inadvertently left out. However, Relator advances that its interpretation of the contract—reading out the apostrophe "s" as a typographical error—is equally reasonable, which presents an ambiguity in the contract, raising a question of fact that should have been preserved for trial. Therefore, the trial court abused its discretion in ruling on the "intent of the parties" and "what the parties agreed to when they signed the agreement" despite those issues not being properly before the court and, more importantly, despite Relator not being able to present its evidence as to intent.[3]

Moreover, because the contract is disputed and subject to more than one reasonable interpretation, Relator asserts that the excluded extrinsic evidence is relevant under La.Code Evid. arts. 401 and 402.[4] It further argues that limiting evidence solely to the value of the Company's assets without considering the value

---

[3] In support, Relator recites jurisprudence holding that summary judgment determining factual issues regarding intent of the parties in ambiguous contracts is rarely appropriate. *See Carter v. BRMAP*, 591 So.2d 1184 (La.App. 1 Cir. 1991).

[4] Citing *Sec. Ctr. Prot. Servs., Inc. v. Lafayette Sec. & Elec. Sys., Inc.*, 95-693 (La.App. 5 Cir. 1/17/96), 668 So.2d 1156, *writ denied*, 96-428 (La. 3/29/96), 670 So.2d 1217 (extrinsic evidence only admissible to resolve contractual ambiguity); *Rabenhorst Funeral Home, Inc. v. Tessier*, 95-1088 (La.App. 1 Cir. 5/10/96), 674 So.2d 1164 (court may look beyond original agreement to determine intent when contract is ambiguous).

5

of the Company and the extent of its debts and obligations would also be improper in light of: (1) the extensive discussion of the "income approach" to valuation by plaintiff's appraisal expert, which requires a full review of the Company's financial condition, and (2) La.R.S. 12:1327,[5] which prohibits distributions if an LLC cannot pay its debts.[6]

In opposition, plaintiff notes at the outset that Relator can proffer its evidence to complete the record; as such, no harm arises from denying the present writ. Plaintiff next asserts that the evidence regarding the Company's value or membership value is not relevant because the formula to determine the "Death Purchase Price" does not provide for any discounts or any reductions for minority ownership, lack of marketability of the member's interest, or indebtedness of the Company. It simply provides for a purchase price to be determined by the application of a member's ownership percentage to the appraised value of the Company's assets. Therefore, any evidence deviating from that standard, such as the value of the "company membership interest," is irrelevant and immaterial. Plaintiff further argues that the only rational reading of the provision before the court is that the price is determined according to this method as the trial court

---

[5] La.R.S. 12:1327(A) provides:

    A. No distribution shall be made if, after giving effect to the distribution:
        (1) The limited liability company would not be able to pay its debts as they become due in the usual course of business.
        (2) The limited liability company's total assets would be less than the sum of its total liabilities plus, unless the articles of organization or a written operating agreement provides otherwise, the amount that would be needed if the limited liability company were to be dissolved at the time of the distribution to satisfy the preferential rights of other members upon dissolution which are superior to the rights of the member receiving the distribution.
        (3) The authorization or payment thereof would be contrary to any restrictions contained in the articles of organization or a written operating agreement.

[6] According to Relator, the most recent unaudited financial statements indicated that the Company "was operating at a net loss of $596,913.44 and that the Company's total equity was a negative $567,746.66."

6

found, whose finding was neither an abuse of authority nor a mistake of law. Simply put, the trial court found that the contract is unambiguous.

Intervenor, Red River Bank, filed a brief in support of the application[7] in which it alleges that the trial court erred in granting what, effectively, was a motion for summary judgment on the factual issue of intent, which was not properly before the court. Essentially, the trial court found the contract ambiguous, added a word not found in the document, and then decided that, because it found the word was inadvertently left out, evidence related to the true value of the Company was inadmissible. Intervenor contends that this was clear legal error and an abuse of discretion as contract interpretation is fodder for a motion for summary judgment, but no such motion has been filed herein. Moreover, summary judgment would be inappropriate in the face of the ambiguous provision at issue. Intervenor further argues that even if the court had the authority to perform a contractual interpretation analysis, its analysis was still erroneous because, rather than consider parol evidence to determine the intent of the parties, the court unilaterally added the word "assets," substituting its interpretation for the intent of the parties. Intervenor also points out that, because plaintiff argues that Relator is contractually obligated to purchase Dr. Shaw's membership interest, Relator is the obligor in

---

[7] Red River Bank intervened because Relator and its members entered into various security agreements with Red River Bank to secure the assets of the Company in favor of Red River Bank in connection with monies borrowed by the Company, "including a promissory note, multiple indebtedness mortgage, and a business loan agreement." Further all of the members, including Dr. Shaw, executed personal guaranties in relation to the Company's indebtedness. Should plaintiff succeed in this suit, Dr. Shaw's heirs could attempt to prime the guaranty executed by Dr. Shaw and, further, render the Company incapable of paying its indebtedness to Red River Bank.

whose favor the obligation must be interpreted under La.Civ.Code art. 2057.[8] Finally, Intervenor adopts and incorporates Relator's discussion on relevancy.

It is not disputed that the contractual provision at issue contains a grammatical error, *i.e.*, "Company's." Plaintiff advances an interpretation of the provision as merely an unintended omission of the word "assets." Relator and Intervenor argue that the apostrophe "s" is merely a typographical error. A motion in limine is a device developed in our jurisprudence to test the admissibility of evidence prior to trial as an extension of the trial court's gatekeeper function for which great deference is afforded. It is not intended to resolve issues of law, such as the contractual interpretation at issue, for which no discretion is granted and review is de novo. The limits of the motion in limine were exceeded in this case. The trial court determined the method by which the members agreed to calculate the "Death Purchase Price," and this, in turn, logically required the court to first interpret the grammatically incorrect "Company's," with the trial court ultimately finding that there was an inadvertent omission of the word "assets." Such a determination was not proper on a motion in limine. Therefore, we find that the trial court abused its discretion in granting the motion in limine.

**WRIT GRANTED AND MADE PEREMPTORY.**

---

[8] La.Civ.Code art. 2057 provides, in part: "In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation."