# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-606


WILVAN M. MILLER, ET UX

VERSUS

MORRISON ENVIRONMENTAL SERVICES, INC.,

ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 267,524
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.


**REVERSED.**

**B. Gene Taylor, III**
**Connor C. Headrick**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Wilvan M. Miller**
    **Laine B. Miller**

**Sidney Wallis Degan, III**
**Degan, Blanchard & Nash, A Professional Law Corporation**
**400 Poydras Street, Suite 2600**
**New Orleans, LA 70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Gemini Insurance Company**

**Mandy A. Simon**
**Degan, Blanchard & Nash, A Professional Law Corporation**
**600 Jefferson Street**
**Lafayette, LA 70501**
**(337) 345-8628**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Gemini Insurance Company**

**Barbara Bell Melton**
**Christopher Chesne**
**Faircloth Melton Sobel & Bash, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Morrison Environmental Services**

**James B. Reichman**
**Reichman Law Firm**
**728 Jackson St.**
**Alexandria, LA 71301-8011**
**(318) 442-3251**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Morrison Environmental Services**

**GREMILLION, Judge.**

Plaintiffs, Wilvan M. Miller and Laine B. Miller, appeal the trial court's grant of partial summary judgment to Morrison Environmental Services, Inc., d/b/a Adams Pest Control of Alexandria, and its insurer, Gemini Insurance Company (Adams). For the reasons that follow, we reverse the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL POSTURE[1]

The Millers built their home in Alexandria, Louisiana, beginning in 1994. As part of the construction process, they hired Adams to pre-treat for subterranean termites. Mr. Miller and the owner of Adams, Mr. Edward Morrison, executed an undated pre-construction contract for the treatment of subterranean termites. The contract contains a number of exclusions for things such as infestation by aerial termites; building additions that are not treated by Adams; requirements that the Millers maintain the property free from conditions conducive to termite infestation, such as loose wood or lumber, standing water, etc.; and a requirement that any causes of action or claims be preceded by an inspection by an agent of the Louisiana Structural Pest Control Commission. Pertinent to this appeal, the contract also provides, in section 3(e):

> The Company's liability for property damages shall be limited to the cost of repairs (labor and materials only) and in no event shall the Company's liability for property damages exceed the limits of insurance required under LA RS 3:3367(C)(2). All claims for property damage for which the Company may be responsible shall be agreed to in writing by both parties, prior to construction or renovation.

Over the intervening years, the Millers paid an annual renewal fee to Adams to maintain the contract. However, on the anniversary of the contract, Adams sent

---

[1] The facts narrated herein were derived from the exhibits to the motions for summary judgment.

the renewal bill to the Millers for 2013 that purported to indicate that, "This is a Retreatment Agreement only." Despite this annotation, the Millers continued to renew the contract annually. Adams chose to not renew the contract in 2019.

Extensive termite damage was found in the Millers' home. They hired Mrs. Miller's brother-in-law, Steven Soileau, a contractor, to repair the damage.

The Millers filed suit against Adams, asserting claims that sound in both negligence and tort. In September 2021, Adams filed a motion for summary judgment in which it argued that the contract it had with the Millers was a "retreatment only" contract. In the alternative, Adams argued that its liability was limited by the provision quoted above. Gemini Insurance Company joined Adams' motion.

The Millers filed a motion for summary judgment of their own, which asked the trial court to rule that no retreatment agreement was confected, and the pre-construction contract applied with no limitations of damages. Specifically, they argued that section 3(e) purported to limit Adams' liability to the limits of insurance required under LA RS 3:3367(C)(2), which contains no limits of insurance. Rather, La.R.S. 3:3367(C)(1), the preceding subsection, sets forth the liability insurance limits required of a pest control service. Because standard-form contracts are construed against the party that supplied the language, the Millers argued, the court should not enforce section 3(e) of the pre-construction contract.

The motions were heard on March 7, 2022. The trial court ruled that the 2013 invoice indicating "This is a Retreatment Agreement only[]" did not constitute an offer to enter into a new contract; thus, the Millers did not consent to a new contract. Further, the pre-construction contract provided for annual renewal, which reinforced the trial court's conclusion that no new contract was confected.

2

The trial court cited the cases of *Menard v. Orkin, LLC*, (W.D.La. 2018) (unpublished opinion),[2] and *Cenac v. Orkin, LLC*, 941 F.3d 182 (5th Cir. 2019) for the proposition that Louisiana has long upheld contractual limitations on liability in termite contracts.

The trial court ruled:

> For the written reasons given this date[,] the Court finds that the applicable contract to this matter is the pre-construction contract. The parties did not formulate a retreatment contract. The pre-construction contract is a document created in a highly regulated industry with contracts created by that industry to contain specific limitations: Recovery is limited to the costs of repairs (labor and materials); dismantling is at the cost of the customer[;] and damages to items within the home due to treatment is not covered.

Counsel were instructed to draft an order reflecting the court's ruling.

On March 23, 2022, the trial court issued Revised Written Reasons. These reiterated the trial court's earlier rulings and addressed the issue of section 3(e). The trial court noted (footnotes omitted):

> As pointed out by Adams' counsel, the 2018 Western District's opinion of *Menard v. Orkin* provides a thorough review of the pest control contract cases and recognizes that Louisiana courts have routinely upheld limitations on liability. In addition to the cases listed within the *Menard* opinion, this Court also reviewed the *Cenac v. Orkin* matter. Limitations on liability have been upheld when the issue is one of a contractual relationship, however the *Cenac* court left the opportunity for a tort action open. As in the *Cenac* case, the discussion in this case held during and following arguments on the motions, also dealt whether the plaintiffs were seeking a tort action. Adams seeks a dismissal of any tort action based upon the limits of a contract, however as the [*Cenac*] case indicates, possible tort actions remain viable.
>
> Applying the jurisprudence to the pre-construction contract[,] the damage section contains contractually limiting language. The contract is clear and specific with this opinion addressing those sections that were of issue in the motions filed:
>
> Performing the work section: . . . will not be responsible for damage caused by . . . work performed except resulting from gross negligence[.]

---

[2] 2018 WL 5019960

Damage section:

3 (b) — dismantling of parts of the structure — The customer is responsible for the additional cost[.]

3(e) — (1st sentence) liability for property damages is limited to the cost of repairs (labor and materials only) with the limit on the damages to be as set under LA RS 3:3367(C)(2).

The Court notes that LA Revised Statute listed in 3(e), and as suggested by Counsel for Adams, should reflect LA R.S. 3:3367(C)(1) which specifically addresses the liability limitations as suggested by the leading language to this section of the contract. The language accepted by this Court limiting liability of the property damage to $100,000 reads as follows:

> A certificate of insurance written by an admitted or nonadmitted insurance company which has complied with the requirements of the Insurance Code, covering the applicant's public liability for not less than two hundred and fifth [sic] thousand dollars per accident and not less than one hundred thousand dollars property damage. The certificate of insurance shall provide for ten days written notice to the commission prior to cancellation.

However, the Court notes that the evidence supports a finding that the Millers did satisfy the second sentence of 3(e) which requires the parties to agree in writing prior to any construction or renovation. Clear to this Court is the ongoing communications between Adams, via Butch Morrison and then communications with the adjuster about the concerns of the homeowners, the Millers. Perhaps out of frustration the adjuster gave in and said do what you have to do, however permission was given. The Court is aware that there remains a question as to what specific renovations were required and what renovations were perhaps upgrades for the homeowners, those cost are yet to be determined by this Court.

For the written reasons given this date the Court finds that the applicable contract to this matter is the pre-construction contract. The parties did not formulate a retreatment agreement. The pre-construction contract is a document created in a highly regulated industry with contracts created by that industry to contain specific limitations: recovery is limited to the cost of repairs (labor and materials) with the limit of one hundred thousand dollars in property damage as specified in LA RS 3:3367 (C)(1); dismantling is at the cost of the customer and damages to items within the home due to treatment is not covered.

## ASSIGNMENTS OF ERROR

The Millers appeal the trial courts judgment, assigning the following as error:

**Error/Issue No. 1:**

The trial court erred by rewriting the parties' contract to supply an exculpatory provision in favor of the party who furnished its text.

**Error/Issue No. 2:**

The trial court erred to the extent its failure to construe the parties' contract against Adams was based on a finding that the contract was "a document created in a highly regulated industry with contracts created by that industry," when there was no summary judgment evidence offered in support of that position and the court relied solely on the argument of Adams' counsel over objection.

Adams did not answer the appeal.

## ANALYSIS AND DISCUSSION

The Louisiana Supreme Court discussed the pertinent law of summary judgments (alteration in original):

> We review a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

*Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765.

> [T]here is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966. *See Marigny v. Allstate Ins. Co.,* 95-952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229, *writ denied,* 96-693 (La.4/26/96), 672 So.2d 910. Because this case involves cross-motions for summary judgment, our task is to determine whether either party has established that there are no genuine issues of material fact and whether either party is entitled to judgment

as a matter of law. *Duncan v. U.S.A.A. Ins. Co.,* 06-363 (La.11/29/06), 950 So.2d 544.

*Bridges v. Cepolk Corp.*, 13-1051, p. 10 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137, 1145, *writ denied*, 14-901 (La. 8/25/14), 147 So.3d 1117. The only matter before us is the interpretation of the contractual limitation clause of the pre-construction contract. *See* La.Code Civ.P. art. 966(F). In the endeavor, we are guided by principles contained in the Louisiana Civil Code.

Contractual interpretation is the "determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning[,]" but "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not one that renders it ineffective." La.Civ.Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

*Assignment of Error No. 1*:

Whether a contract is ambiguous is a question of law. *Succession of Shaw v. Alexandria Inv. Group, LLC*, 17-582 (La.App. 3 Cir. 7/26/17), 248 So.3d 332. "Ambiguity as to intent arises when the contract lacks a provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty

6

or ambiguity as to its provision, or the intent of the parties cannot be ascertained from the language employed." *Id*. at 336. If the contract is not ambiguous, summary judgment is appropriate because the interpretation is drawn from within the four corners of the document without resort to extrinsic evidence. *LFI Fort Pierce, Inc. v. Acme Steel Bldg., Inc.*, 16-71 (La.App. 3 Cir. 8/17/16), 200 So.3d 939, *writ denied*, 16-1684 (La. 11/29/16), 210 So.3d 804.

Once a court has determined as a matter of law that a contract is ambiguous, extrinsic evidence may be introduced to ascertain the parties' true intent. Our colleagues on the first circuit have observed:

> As a general rule, a motion for summary judgment "... is *rarely* appropriate for a determination based on *subjective facts* such as intent, motive, malice, knowledge or good faith." (Emphasis added). *Penalber v. Blount,* 550 So.2d 577, 583 (La.1989). Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate. *See, for example, Dixie Campers, Inc. v. Vesely Company,* 398 So.2d 1087 (La.1981); *Liem v. Austin Power, Inc.,* 569 So.2d 601 (La.App. 2nd Cir.1990).

*Carter v. BRMAP*, 591 So.2d 1184, 1189 (La. App. 1 Cir. 1991).

However, the issue herein really concerns a vice of consent, error. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949.

There are two types of error, unilateral and mutual. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13) 144 So. 3d 791. Comment (d) to Article 1949 notes that when both parties are in error, the contract may be rescinded or reformed to reflect the parties' intent. Reformation of a contract is a remedy only available "upon mutual error for the explicit purpose of reforming an instrument to reflect the true

7

intent of both parties." *Peironnet*, 144 So.3d at 809. "[T]he burden of establishing mutual error by clear and convincing proof" lies with the party urging reformation. *Id.* (quoting Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion,* 50 La.L.Rev. 1, 46 (1989)).

However, when only one party is in error, "granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error." La.Civ.Code art. 1949, comment (d). Further, the Civil Code provides for severability of a null provision: "Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision." La.Civ.Code art. 2034. Accordingly, partial rescission presents a third possible remedy for unilateral error.

Another factor that must be considered in determining whether a contract should be rescinded is the excusable nature of the error. An example of an excusable error, which would justify rescission, offered by the supreme court in *Peironnet* was that of a seller who purchased property for commercial property located in a neighborhood and who justifiably believed that the property was unconditionally zoned. Conversely, the court noted that had the same purchaser proceeded with the transaction without inquiring into whether that use would be prohibited, his error would be inexcusable, and he would not be entitled to rescission. Another example of an inexcusable error is found in the obligee who signs a contract without reading it, "in the absence of any charge or proof of fraud, force or improper influence." *Peironnet*, 144 So.3d at 810. (quoting *Watson v. The Planters' Bank of Tennessee*, 22 La.Ann. 14 (1870)).

The finding of error, including whether the error involves a cause of the contract, is unilateral or mutual, and is excusable or inexcusable, are all findings of fact. *Id.* The burden of proving them by clear and convincing evidence rested with Adams. Other than convincing the court that an error exists in the contract, Adams failed to offer proof of a clear and convincing nature regarding any of the other elements necessary to support reformation of the contract.

Accordingly, the judgment of the trial court granting summary judgment in favor of Morrison Environmental Services, Inc., d/b/a Adams Pest Control of Alexandria, and its insurer, Gemini Insurance Company is reversed. All costs of this appeal are taxed to defendant/appellee, Morrison Environmental Services, Inc., d/b/a Adams Pest Control of Alexandria.

**REVERSED.**