## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-71


LFI FORT PIERCE, INC.

VERSUS

ACME STEEL BUILDINGS, INC.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20133395
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

## DAVID KENT SAVOIE
## JUDGE

**********

Court composed of Sylvia R. Cooks, John E. Conery, and David Kent Savoie, Judges.



**REVERSED AND REMANDED.**

**Kraig Thomas Strenge**
**Attorney at Law**
**Post Office Drawer 52292**
**Lafayette, LA 70502-2292**
**(337) 261-9722**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Acme Steel Buildings, Inc.**
    **United Fire & Casulty Company**

**Kirk L. Landry**
**Virginia J. McLin**
**Keogh, Cox & Wilson, Ltd.**
**701 Main Street**
**P. O. Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **L.F.I. Fort Pierce, Inc.**
    **Ace American Insurance Company**

**SAVOIE, Judge.**

Plaintiffs, L.F.I. Fort Pierce, Inc. ("LFI"), and LFI's workers' compensation insurer, Ace American Insurance Company ("Ace"), appeal a summary judgment granted in favor of Defendants, Acme Steel Buildings Inc. ("Acme"), and Acme's liability insurer, United Fire and Casualty Company ("United Fire"), dismissing Plaintiffs' tort and contract claims seeking reimbursement for workers' compensation benefits paid, or to be paid, to an injured employee. The trial court found that (1) Acme was the statutory employer of the injured employee and therefore immune from Plaintiffs' tort claims asserted herein; and (2) that there was no breach of contract and/or contractual indemnity owed to Plaintiffs for workers' compensation payments that they paid, or will pay, to the injured employee. For the reasons that follow, we reverse the trial court's ruling, and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Nelson Dugas was allegedly injured on July 5, 2012, as a result of an accident that occurred on a construction site when a scissor-lift he was operating fell. Mr. Dugas was an immediate employee of LFI, which is a temporary staffing company who provides laborers for lease to other companies. LFI and/or its workers' compensation insurer, Ace, paid workers' compensation benefits to Mr. Dugas.

Defendant Acme was a subcontractor at the construction site performing work pursuant to a contract with the general contractor, Commercial Construction & Development ("CC&D"). Acme had also contracted with LFI for temporary labor, and, at the time of the accident, Mr. Dugas, was performing work as a temporary laborer for Acme pursuant to the agreement between Acme and LFI.

On July 3, 2013, LFI and Ace filed a petition for damages against Acme and United Fire seeking reimbursement for workers' compensation benefits paid, or to be paid, to Mr. Dugas. They allege that Acme was the owner of the scissor-lift being operated by Mr. Dugas, that the scissor-lift was defective, and that Acme was negligent with respect to the scissor lift. They assert that, pursuant to La.R.S. 23:1101,[1] they are entitled to seek recovery from Acme, as a third-party tortfeasor, for workers' compensation benefits paid. In addition, LFI and Ace assert that the terms of LFI's contract with Acme require Acme to indemnify it for "injury or damage caused to Nelson Dugas[,]" and that Acme's "failure to pay pursuant to this agreement constitutes a violation and breach of this contract."

---

[1] Louisiana Revised Statutes 23:1101 states:

A. When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as "third person") other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.

B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit in district court against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person, and where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage. The amount of any credit due the employer may be set in the judgment of the district court if agreed to by the parties; otherwise, it will be determined pursuant to the provisions of R.S. 23:1102(A).

C. For purposes of this Section, "third person" shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay benefits under this Chapter because the injury by the third party has aggravated the employment related injury.

2

A separate workers' compensation proceeding wherein LFI and Ace are seeking reimbursement from Acme and United Fire is also pending.

On April 16, 2015, Defendants filed a motion for summary judgment in the instant action seeking the dismissal of Plaintiffs' claims on the basis that Acme is the "statutory employer" of Mr. Dugas as defined by La.R.S. 23:1061, and therefore immune from the tort claims asserted against it. Defendants also sought dismissal of Plaintiffs' contract claims asserting there was no viable basis for the claims and/or that any indemnity language in the contract was inapplicable. A hearing on Defendants' motion was held June 22, 2015.

The trial court rendered judgment in favor of Defendants and dismissed LFI's and Ace's claims. LFI and Ace appeal the trial court's judgment and assert the following as assignments of error:

1. The Trial Court erred when it found that Acme Steel Buildings, Inc. was the statutory employer of Nelson Dugas when genuine issues of material fact preclude summary judgment on this issue.

2. The Trial Court committed legal error when it found that Acme Steel Buildings, Inc. was the statutory employer of Nelson Dugas.

3. The Trial Court erred when it summarily dismissed L.F.I. Fort Pierce, Inc.'s breach of contract claim against Acme Steel Buildings, Inc. when genuine issues of material fact existed precluding summary judgment.

**STANDARD OF REVIEW:**

Louisiana Code of Civil Procedure Article 9662 (A)(2) explains that the "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination" of actions. Further, "[t]he procedure is favored and shall be construed to accomplish these ends." *Id.* A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

3

Although the moving party bears the burden of proof on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party's claim, action or defense if he or she will not bear the burden of proof at trial on the matter at issue. La.Code Civ.P. art. 966(C)(2). Rather, the movant is required "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* In turn, if the adverse party does not produce sufficient factual support to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, there is no genuine issue of material fact. *Id.* On review, an appellate court considers a summary judgment *de novo*, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Reynolds v. Bordelon*, 14-2371, p. 3 (La.6/30/15), 172 So.3d 607, 610.

*Blanks v. Entergy Gulf States La., LLC*, 15-1094, pp. 3-4 (La.App. 3 Cir. 4/6/16), 189 So.3d 599, 601 (footnote omitted).[2]

## ASSIGNMENT OF ERROR NO. 1:

In their first assignment of error, LFI and Ace assert that there are material issues of fact precluding a summary judgment ruling that Acme is the "statutory employer" of Mr. Dugas under La.R.S. 23:1061.

Louisiana Revised Statutes 23:1061 provides as follows with respect to a statutory employer's immunity from tort liability:

A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2)[3], undertakes to execute any work, which is a part of his trade, business,

---

[2] As in *Blanks*, *Id.*, we note that:

While Article 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016, we consider this matter under the provisions of the Louisiana Code of Civil Procedure as they existed at the time of the trial court's consideration. *See* 2015 La.Acts. No. 422, § 2 (providing that: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.").

[3] Louisiana Revised Statutes 23:1032(A)(2) defines "principal" as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."

4

or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

There is no contract between Acme and LFI that expressly recognizes Acme as the statutory employer of LFI's immediate employees, therefore, the evidence

does not support a finding that Acme is a statutory employer under La.R.S. 23:1061(A)(3).[4]   Therefore, at issue is whether the requirements for "statutory employer" under La.R.S. 23:1061(A)(2), which is often called the "two contract defense," have been satisfied. *See Allen v. State ex. rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, p. 8 (La. 4/9/03), 842 So.2d 373, 379.

> The "two contract" defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed.

*Id.*

In the instant matter, Acme identifies the two contracts as (1) a contract between it and the general contractor, CC&D, and (2) a contract between it and LFI. Our interpretation of those contracts is governed by the following principles:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." "Interpretation of a contract is the determination of the common intent of the parties." The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the

---

[4] The document entitled "Credit Application," which sets forth terms of the agreement between LFI and Acme, states:

> To the extent that an assigned temporary worker is not listed on the daily work ticket, you, as the customer will be considered the employer of the employee and the employee will be eligible for payment of wages, as well as workers' compensation benefits as your company's direct employee or borrowed servant.

However, in the instant matter, Mr. Dugas was listed on the daily work ticket that Acme submitted to LFI, thefore, this provision is not applicable.

parties. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (citations omitted).

A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.

*Campbell v. Melton*, 01-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75.

When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court. . . .

However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact. In this posture, the granting of a summary judgment is appropriate only if "there is no genuine issue as to material fact . . ."

. . . As a general rule, a motion for summary judgment ". . . is *rarely* appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith." (Emphasis added). Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate.

*Carter v. BRMAP*, 591 So.2d 1184, 1188-89 (La.App. 1 Cir. 1991) (footnote omitted)(citations omitted).

To establish the contract between Acme and CC&D, Acme submitted as evidence excerpts from the deposition of Mr. Brady White, a representative of Acme. Mr. White testified that, on the day of the accident at issue, Acme was constructing a building on the jobsite for CC&D. He indicated that Mr. Dugas was working with five other men, three of whom were immediate employees of Acme

and two who were temporary employees. He testified that the steel structure was in place and that Mr. Dugas was waiting in the scissor-lift for the other crew members to roll out chicken wire on the top of the roof so that he could place screws in it.

Mr. White further testified that typically contractors would provide Acme, as a subcontractor, with a purchase order, "but that most of the work we do doesn't really involve written contracts." He also identified a purchase order, entitled "subcontract order", that Acme received from CC&D, which identified the following items and the respective cost to complete each: "Furnish and Install Complete Metal Building System;" "Furnish and Install (22) Roof Skylights;" "Furnish and Install Roof Ridge Vents;" and "Furnish and Install Roof Chicken Wire."

When asked whether the agreement between CC&D and Acme contemplated the fact that Acme was going to be using temporary personnel, Mr. White stated, "[i]t was never discussed." However, according to Mr. White, Acme knew it would need additional labor to perform the work that it agreed to perform for CC&D, and CC&D was aware that Acme was going to contract with LFI for extra workers needed to perform the job.

In connection with the contract between Acme and LFI, which is evidenced by the terms and conditions provided on both the "credit application" and "work order ticket," Acme did not subcontract with LFI specifically for the performance of any of the jobs or services that Acme had contracted with CC&D to provide. Instead, the contract stated that LFI is a "Temporary Employment Service, which hires its own employees and assigns them to customers to support or supplement the customer's work force."

We therefore find that the contract between CC&D and Acme is ambiguous as to whether or not it included or contemplated the services or work that LFI provided to Acme (i.e. temporary labor). Therefore, there is an issue of material fact as to whether Acme is a statutory employer under La.R.S. 23:1061(A)(2), and summary judgment was improper.

## ASSIGNMENT OF ERROR NO. 2:

In their second assignment of error, LFI and Ace alternatively assert that, if the facts asserted by Acme "are taken as true", then Acme is not a "statutory employer" under La.R.S. 23:1061(A)(2), but rather a borrowing, or "special," employer under La.R.S. 23:1031.[5] If this is the case, as LFI and Ace suggest, then summary judgment dismissing their tort claims would have been proper since "special employers" are "entitled to the exclusive remedy protections provided in [La.]R.S. 23:1032." La.R.S. 23:1031(C). However, the issue of whether Acme is a "special employer" under La.R.S. 23:1031 was not presented to, or decided by, the trial court, in connection with Defendants' motion for summary judgment, therefore, we will not consider the issue.

## ASSIGNMENT OF ERROR NO. 3:

In their third assignment of error, LFI and Ace argue that there are material issues of fact that prevented summary judgment dismissing their contract claims.

---

[5] LFI and Ace appear to be concerned that the trial court's ruling as to "statutory employer" would preclude a finding that Acme was a borrowing, or "special", employer under La.R.S. 23:1031(C) and prevent them from seeking contribution from Acme as a solidary obligor of workers' compensation benefits to Mr. Dugas in the separately pending workers' compensation proceedings. *See* La.R.S. 23:1031(C). However, an entity meeting the criteria of a "statutory employer" under La.R.S. 23:1061 may also be considered a borrowing employer under La.R.S. 23:1031 and subject to contribution claims by other employers. *See Maddox v. Superior Steel*, 00-1539 (La.App. 1 Cir. 9/28/01), 814 So.2d 569. Whether or not LFI and Ace are entitled to contribution from Acme and United Fire under La.R.S. 23:1031(C) is not presently before this court.

They point to the following provisions found in the "Account Terms" listed on the

credit application with Acme:

> 3. Customer agrees that it will not, without the prior written consent of LABOR FINDERS, utilize LABOR FINDERS' employees to operate machinery, equipment or vehicles not covered by the Customers' liability and property damage insurance; to operate dangerous or unprotected machinery; . . . .

> 6. Customer assumes and agrees to indemnify and hold harmless LABOR FINDERS from any claims for bodily injury (including death), or loss of and loss of use of or damage to property arising out of the use or operation of Customer's owned, non-owned, or leased vehicles, machinery, or equipment by LABOR FINDERS' employees and from any claims of or on behalf of employees brought under or virtue of their employment as seaman or as a member of the crew of any vessel.

The Account Terms and Conditions stated on the back of the work order

similarly state:

> 1. <u>Assignment: Compliance: Restrictions:</u> . . . . All temporary employees assigned to Customer by LF ("LF Personnel") are employees of LF. LF is responsible for hiring, disciplining, terminating and/or reassigning, shall carry Workers' Compensation and unemployment insurance as required by Jurisdictional Statute with respect to, and has the sole right to establish wages and benefits for, all such LF Personnel. Notwithstanding the above, if customer carries its own Workers' Compensation policy which covers LF Personnel, customer shall notify LF and LF shall have no obligation to carry duplicate coverage. . . . Customer will not, without LF's prior written consent, utilize LF personnel (a) to operate (I) machinery, equipment or vehicles not covered by the insurance coverage requested below, or (ii) dangerous or unprotected machinery . . . .

> 2. <u>Insurance: Limitation on Liability: Indemnification</u> . . . . Customer agrees to indemnify, defend, and hold LF and its affiliates . . . harmless from all claims, costs, demands, suits, actions, liabilities, losses, expenses, damages and penalties arising out of (A) Customer's breach of the Account Agreement (including Customer's violation of applicable laws or Customer's assignment of LF Personnel as prohibited herein; (B) any death, injury, or damage to or lost property caused by Customer or assigned LF Personnel or their use of vehicles, machinery or equipment, furnished by Customer, or (C) any negligence, willful misconduct or other act or omission of assigned LF Personnel or Customer or its agents, contractors, or employees.

10

LFI and Ace argue that:

> Acme agreed to indemnity and hold harmless L.F.I. from any claim arising out of: (1) the customer's breach of the agreement; 2) any damage caused by the customer or L.F.I. personnel or their use of vehicles, machinery or equipment, furnished by the customer, or 3) any negligent or willful misconduct or other act or omission of L.F.I. personnel or agents, contractors, or employees of Acme. Nowhere does the language specifically state that the indemnification provision is limited solely to damage caused by L.F.I. to a third party.

LFI and Ace further state that they "interpret[] the indemnity provision to provide L.F.I. a cause of action for indemnity and contribution from a customer, such as Acme, when an L.F.I. employee is injured because of the customer's negligence," and that there are material issues of fact pertaining to Acme's negligence, as well as whether Acme breached the contract when it allowed Mr. Dugas to operate the scissor-lift, which, according to LFI was "dangerous" machinery.

On the other hand, Acme and United Fire assert that the contract language, as written,

> [I]s directed to liability for damages "caused by Customer or assigned LF Personnel," or for "any negligence, willful misconduct or other act or omission of assigned LF Personnel." This language appears to have been intended as an indemnity provision directed toward injury to others caused by LFI's employees while working for and under the supervision of a customer, and not indemnification of Worker's Compensation benefits which LFI expressly agreed to provide coverage for to their own employees in their Credit Application. Acme is therefor of the position that this indemnification provision contained in the Work Orders was never intended to provide indemnification of a Workers' Compensation lien, but that it if was[,] it is too ambiguous to be enforced.

Acme alternatively argues that, even if the indemnity language is applicable to workers' compensation payments LFI paid to Mr. Dugas, the indemnification provisions are prohibited as a matter of public policy and unenforceable. In support thereof, Acme cites to *Smith v. Brown*, 11-1749 (La.App. 1 Cir. 8/15/12),

11

97 So.3d 1186, *writ denied*, 12-2015 (La. 11/16/12), 102 So.2d 39, which involved a contract between a temporary employment agency and operator of a chemical claim that expressly provided indemnity to the temporary employment agency for workers' compensation benefits. In finding the indemnification provision to be unenforceable, the *Smith* court stated:

> Because the workers' compensation statutes are in derogation of the universal right to sue for damages provided by La. C.C. art. 2315, the immunity provisions must be strictly construed. *See Prejean v. Maintenance Enterprises, Inc.*, 08-0364, p. 10 (La.App. 4 Cir. 3/25/09), 8 So.3d 766, 773. [Louisiana Revised Statutes] 23:1033 is clear that except where specifically provided by the Workers' Compensation Act, no contract shall relieve an employer from any liability created by the Workers' Compensation Act. This is precisely what the indemnity provision at issue in the case attempts to do – shield an employer from both tort liability and workers' compensation liability. This is both prohibited by the clear language of La. R.S. 23:1033 and is contrary to public policy.

*Id.* at 1191.

Because there is an issue of material fact as to whether Acme is a "statutory employer," "borrowed employer," or rather a "third person" subject to tort liability under La.R.S. 23:1101, there is also an issue of material fact as to whether the above indemnity provisions apply to the workers' compensation benefits LFI paid, or will pay, to Mr. Dugas and whether any such contract provisions are prohibited by La.R.S. 23:1033 and/or public policy considerations. Therefore, summary judgment dismissal of Plaintiffs' contract claims was also improper.

## CONCLUSION

For the reasons set forth above, the summary judgment dismissing LFI's and Ace's claims is hereby reversed, and the matter is remanded for additional proceedings. Costs of this appeal are assessed to Defendants-Appellees, Acme and United Fire.

**REVERSED AND REMANDED.**