# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-405

LUTHER CHARLES

VERSUS

TRANSCONTINENTAL GAS PIPELINE, LLC, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 20-C-3122-B
HONORABLE JAMES PAUL DOHERTY JR., DISTRICT JUDGE

**********

## GUY E. BRADBERRY
## JUDGE

**********

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Nicholas A. Blanda**
**Jason A. Weaver**
**Anderson Blanda & Saltzman**
**2010 West Pinhook Road**
**Lafayette, Louisiana 70508**
**(337) 233-3366**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Luther Charles**

**John F. Jakuback**
**Forrest E. Guedry**
**Amanda Collura-Day**
**Kean Miller LLP**
**Post Office Box 3513**
**Baton Rouge, Louisiana 70821-3513**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Transcontinental Gas Pipeline Company, LLC**
    **The Williams Companies, Inc.**

**Trevor C. Davies**
**Michael L. Ballero**
**Wanek Kirsch Davies LLC**
**1340 Poydras Street, Suite 2000**
**New Orleans, Louisiana 70112**
**(504) 324-6493**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Tucker Energy Solutions, LLC**

**Ryan T. Morrow**
**9100 Bluebonnet Centre Boulevard, Suite 300**
**Baton Rouge, Louisiana 70809**
**(337) 244-0030**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Blue Fin Services, LLC**
    **Gate Holdings, LLC**
    **Blue Fin Rental and Completion Services, LLC**
    **Liberty Mutual Insurance Company**

**Brad J. Brumfield**
**Post Office Box 7217**
**London, Kentucky 40742**
**(225) 923-7393**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Blue Fin Services, LLC**
    **Gate Holdings, LLC**
    **Blue Fin Rental and Completion Services, LLC**
    **Liberty Mutual Insurance Company**

**D. Scott Rainwater**
**George O. Luce**
**Taylor, Wellons, Politz & Duhe, LLC**
**4041 Essen Lane, Suite 500**
**Baton Rouge, Louisiana 70809**
**(225) 387-9888**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Blue Fin Services, LLC**

**Alexis Polk Joachim**
**Pipes Miles Beckman, LLC**
**1100 Poydras Street, Suite 3300**
**New Orleans, Louisiana 70163**
**(504) 322-7070**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Liberty Mutual Fire Insurance Company**

**Pierre M. Legrand**
**Legrand Law Firm, LLC**
**2450 Severn Avenue, Suite 206**
**Metairie, Louisiana 70001**
**(504) 304-9499**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Hydrochem, LLC**

**Daniel C. Palmintier**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Office of the Attorney General**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana Department of Wildlife and Fisheries**

**Aldric C. Poirier, Jr.**
**David B. Parnell, Jr.**
**Blue Williams, LLC**
**1060 West Causeway Approach**
**Mandeville, Louisiana 70471**
**(985) 626-0058**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Old Republic General Insurance Company**

**Thomas Kent Ledyard Morrison**
**Phelps Dunbar, LLP**
**365 Canal Street, Suite 2000**
**New Orleans, Louisiana 70130-6534**
**(504) 566-1311**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Indian Harbor Insurance Company**

**David I. Clay, II**
**Degan, Blanchard & Nash, APLC**
**400 Poydras Street, Suite 2600**
**New Orleans, Louisiana 70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Indian Harbor Insurance Company**

**Peter F. Caviness**
**Falgoust and Caviness, LLP**
**505 South Court Street**
**Opelousas, Louisiana 70570-5001**
**(337) 942-5812**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Thisco Partnership**

**BRADBERRY, Judge.**

Defendants Transcontinental Gas Pipeline Company, LLC and The Williams Companies, Inc. (collectively "Williams") filed a motion for summary judgment, alleging statutory employer immunity. Defendant Tucker Energy Solutions, LLC (Tucker) also filed a motion for summary judgment on the same issue. The trial court granted the motions for summary judgment, finding Defendants were the statutory employers of Plaintiff Luther Charles, and therefore, were immune from tort liability, pursuant to La.R.S. 23:1061, and dismissed the case against them with prejudice. Luther Charles now appeals both judgments. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 22, 2019, Luther Charles was injured in a workplace accident while he was in the course and scope of his employment with Hydrochem, LLC. Mr. Charles was driving a water truck on a narrow levee road located within the Thistlethwaite Wildlife Management area in Washington, Louisiana, when his truck rolled off the road, resulting in his injuries. At the time, he was transporting water from a nearby lake to a pipeline facility referred to as Station 54, which is owned by Williams.

The Station 54 facility was being serviced in accordance with a contract entered into by Williams and Tucker (the Williams-Tucker Contract) on July 8, 2019. Tucker served as the general contractor on the construction project. It had an existing contractual relationship with Blue Fin Services, LLC (Blue Fin) in the form of a Master Service Agreement (MSA) dated March 21, 2018, to provide services in furtherance of work performed on the Station 54 project. Blue Fin then

hired Hydrochem to perform certain work on Station 54. Hydrochem was the direct employer of Mr. Charles.

Mr. Charles filed suit against multiple Defendants, including Williams and Tucker, for injuries he sustained as a result of the vehicle accident. In response, Williams and Tucker filed separate motions for summary judgment, wherein they both alleged that they were the statutory employer of Mr. Charles and, as such, were immune from tort liability in this case. The motions for summary judgment were heard on March 4, 2024. The trial court granted the motions, finding Williams and Tucker were immune from tort liability as the statutory employers of Mr. Charles pursuant to La.R.S. 23:1061 and dismissing Mr. Charles's claims against them with prejudice.

Mr. Charles now appeals.

## ASSIGNMENTS OF ERROR

1. Given the evidentiary record before the trial court, it erred in holding that [Williams] and [Tucker] were the statutory employers of the Plaintiff on the day in question.

2. Given the evidentiary record before the trial court, it erred in dismissing all claims asserted by Plaintiff against Defendants, [Williams] and [Tucker].

## LAW AND DISCUSSION

### I. *Standard of Review*

Appellate courts review the grant of a motion for summary judgment by the trial court using a de novo review standard. *Litel Expls., LLC v. Aegis Dev. Co., LLC*, 21-741 (La.App. 3 Cir. 4/6/22), 337 So.3d 940, *writ denied*, 22-756 (La. 9/27/22), 346 So.3d 787. "Summary judgment is proper 'if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.'" *Walker*

2

*v. Zurich Am. Ins. Co.*, 24-232, pp. 2–3 (La.App. 3 Cir. 9/4/24), 394 So.3d 310, 313 (quoting La.Code Civ.P. art 966(A)(3)), *writ denied*, 24-1223 (La. 12/27/24), 397 So.3d 1215.

## II. *Statutory Employer Status*

Williams and Tucker claim that they are the statutory employers of Mr. Charles and are, therefore, immune from tort liability in accordance with La.R.S. 23:1061(A). Louisiana Revised Statutes 23:1061(A) sets forth the concept of statutory employer, stating:

(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a

statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

In *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, pp. 5–8 (La. 4/9/03), 842 So.2d 373, 377–79 (footnote omitted) (alteration in original) (emphasis added), the Louisiana Supreme Court discussed the purpose of enacting workers' compensation legislation, explaining:

> Workers' compensation legislation was enacted in the early decades of the twentieth century, not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery under tort law were inadequate to protect these individuals. *Roberts v. Sewerage and Water Board of New Orleans,* 92–2048 (La.3/21/94), 634 So.2d 341, 345, *citing Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979). The legislation reflects a compromise between the competing interests of employers and employees: the employer gives up the defense it would otherwise enjoy in cases where it is not at fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay. *Id.*

> The legislatures that adopted the early workers' compensation acts feared that employers would attempt to circumvent the absolute liability those statutes imposed by interjecting between themselves and their workers intermediary entities which would fail to meet workers' compensation obligations. Frank L. Maraist and Thomas C. Galligan, Jr., *The Employer's Tort Immunity: A Case Study in Post–Modern Immunity,* 57 La.L.Rev. 467, 488 (1997). To assure a compensation remedy to injured workers, these legislatures provided that some principals were by statute deemed, for purposes of liability for workers' compensation benefits, the employers of employees of other entities. *Id.* The legislative approaches to what is commonly referred to as the "statutory employer" doctrine varied.

> Louisiana adopted a broad version of the statutory employer doctrine. The Louisiana Act expressly extends the employer's compensation obligation and its corresponding tort immunity to "principals." . . .

> ….

4

It has long been recognized that these provisions present alternative bases for imposing the workers' compensation obligation on entities that are not direct employers. *See,* 14 Wex S. Malone & H. Alston Johnson, III, Louisiana Civil Law Treatise: Workers' Compensation Law and Practice § 364 at 173 (2002) ("[T]here are alternative bases for the compensation obligation in La. R.S. 23:1061, so as to make the availability of the compensation remedy broad enough to cover two different methods of doing business."). A "principal" (or statutory employer) for purposes of the Act is any person who undertakes to carry out any work which is a part of his trade, business or occupation by means of a contract with another (the "trade, business or occupation" defense); *or*, any person who has contracted to perform work and sub-lets any portion to another (the "two contract" theory of the statutory employer defense). Wex S. Malone, *Principal's Liability for Workmen's Compensation to Employees of Contractor*, 10 La.L.Rev. 25, 27 (1949). As to the "two contract" theory of the statutory employer defense, it is irrelevant whether the subcontractor's work is part of the work ordinarily performed by the principal. In fact, the law presumes the contract to be within the trade, business or occupation of the principal. *See, Berry [v. Holston Well Serv., Inc.]*, 488 So.2d [934 (La. 1986,]* (and cases cited therein). **The "two contract" defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed.** *Id.; Beddingfield v. Standard Construction Company,* 560 So.2d 490, 491–492 (La.App. 1 Cir.1990); *Aetna Casualty and Surety Company v. Schwegmann Westside Expressway, Inc.,* 516 So.2d 412, 413 (La.App. 1 Cir.1987).

There are two ways in which a principal can become a statutory employer: (1) the principal can contract with another for the execution of work that is part of the principal's trade, business or occupation; or (2) the principal can contract with another to perform all or any part of the work which the principal is contractually obligated to perform. *Rosier v. H.A. Lott, Inc.*, 563 So.2d 1321 (La.App. 3 Cir.), *writ denied*, 568 So.2d 1058 (La.1990). "The latter situation is commonly referred to as the 'two-contract' statutory employment defense to tort actions." *Id.* at 1323.

Mr. Charles argues that Williams and Tucker cannot carry their burden that they are his statutory employers under the two-contract theory of statutory employer tort immunity in accordance with La.R.S. 23:1061(A)(2). It is Williams's position

that it is a statutory employer under the first way—the principal can contract with another for the execution of work that is part of the principal's trade, business or occupation. Specifically, Williams argues that it is a principal who entered into a contract with Tucker to test the integrity of the facilities that Williams uses in storing and transporting natural gas. Storing and transporting natural gas to end users across the country is part of Williams's trade, business, or occupation, and the work contemplated in the Williams-Tucker contract is an integral part of Williams's ability to generate its goods, products, or services. *See* La.R.S. 23:1061(A)(3).

Mr. Charles points out that Williams cannot be his statutory employer in this way "unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer." La.R.S. 23:1061(A)(3). It is undisputed that Hydrochem does not have a written contract with either Williams, Tucker, or Blue Fin. However, Williams does have a written contract with Tucker. Therefore, pursuant to La.R.S. 23:1061(A)(3), Williams, as the principal, can be considered the statutory employer of Mr. Charles if Tucker is determined to be Mr. Charles's statutory employer.

When entering into the respective contracts in this case, Defendants contemplated the statutory employer status of the companies. Article 15 of the Williams-Tucker Contract addresses the issue of statutory employers. It states, in pertinent part (emphasis added):

> For Work in the state of Louisiana, in all cases where [Tucker's] employees (**defined to include** [Tucker's] direct, borrowed, special, or **statutory employees**) are covered by the Louisiana Worker's Compensation Act, La Rev. Stat. Ann. 23:1021 *et seq.*, [Williams] and [Tucker] agree that pursuant to Section 23:1061 (A) (1) all Work performed by [Tucker] and its employees under the terms and conditions of this Contract is an integral part of [Williams's] ability to

6

generate its goods, products and services. Additionally, [Williams] and [Tucker] agree that for purposes of Section 23:1061 (A) (3) [Williams] is the principal or statutory employer of [Tucker's] employees. Irrespective of [Williams's] status as the statutory employer or special employer of [Tucker's] employees, Section 23:1031(C), [Tucker] shall remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from [Williams].

The MSA has similar language included that applies to Tucker and Blue Fin.

It states:

In all cases where BLUE FIN'S employees (including BLUE FIN'S borrowed, direct, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act, La. Rev. Stat. 23:1021 et seq, BLUE FIN and [Tucker] agree that the Work performed by BLUE FIN and its employees pursuant to this Contract or Agreement is an integral part of and is essential to the ability of BLUE FIN to generate BLUE FIN's Goods or Services. BLUE FIN and [Tucker] expressly agree that while BLUE FIN and any of its employees, agents, or BLUE FINs are performing Work under this Contract that BLUE FIN will be considered a Statutory Employer within the meaning set forth in La. Rev. Stat. 23:1061 and those employees, agents, and employees of BLUE FIN (herein after called "Statutory Employee") shall be considered a Statutory Employee as the meaning is set forth in La. Rev. Stat. 23:1061.

"When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." La.R.S. 23:1061(A)(3).

Mr. Charles focuses his argument on the MSA between Tucker and Blue Fin. The MSA was executed to be a standing agreement between Tucker and Blue Fin governing work to be performed in the future by Blue Fin for Tucker. It is under this MSA that Tucker hired Blue Fin to perform work on the Station 54 facility.

Mr. Charles first argues that the MSA does not mandate either party to perform work—the second prong necessary to satisfy the two-contract defense. He

7

maintains that the MSA does not define the particular work Tucker hired Blue Fin to perform nor does it bind Blue Fin to actually perform work.

Mr. Charles cites *Fee v. Southern Packaging, Inc.*, 18-1364, 18-1365 (La.App. 1 Cir. 5/24/19), 277 So.3d 787, for the proposition that the contract must obligate the performance of work. In *Fee*, the plaintiff was injured in the course and scope of his employment with a logging company. The logging company was hired by a timber dealer to harvest timber from certain land. Southern Packaging had a timber deed from the family that owned the land, which had an option to harvest the timber within two years. Southern then hired the timber dealer. The insurer of the logging company went bankrupt, prompting the plaintiff to file a claim in Workers' Compensation Court (WCC) against the timber dealer and Southern Packaging, alleging that they were both his statutory employers. The appellate court affirmed the WCC's decision that the timber dealer was not the statutory employer of the plaintiff, finding that the timber dealer was merely a middleman hired to serve as the banker to facilitate the movement of funds between Southern Packaging and the logging company. However, the appellate court reversed the WCC's ruling that Southern Packaging was the statutory employer of the plaintiff. In finding that Southern Packaging was not the statutory employer of the plaintiff, the appellate court found that Southern Packaging and the family that owned the land agreed to a purchase price of the timber with a right to harvest; however, Southern Packaging was not obligated to harvest the timber.

The appellate court in *Fee* explained that "[t]he purpose behind the two contract theory is to establish a compensation obligation on the part of the principal *who contractually obligates itself to a party for the performance of work* and who

then subcontracts with intermediaries whose employees perform any part of that work." *Id*. at 798.

The *Fee* case is distinguishable from the present case in that the contract at issue there was an option to harvest timber. The MSA between Tucker and Blue Fin is a standing agreement similar to the one found in *Allen*, 842 So.2d 373. In *Allen*, the New Orleans Convention Center entered into a long-term contract with Aramark to provide catering services for conventions and other events. Approximately five years later, the convention center entered into a contract with ACE Hardware Corporation to provide a venue for their convention. While the issue in *Allen* was whether there is a temporal requirement to the two-contract defense (there is not), the appellate court found:

> [N]o reason has been advanced, nor can we fathom one, to support a finding that a principal who has a long-standing agreement with a supplier to provide labor and/or services in connection with jobs for which the principal contracts should be treated differently, for the purposes of the compensation obligation, than one who enters separate contracts with the supplier after first contracting with a third party to perform certain work.

*Id.* at 382.

As such, a standing agreement like the MSA in this case is acceptable as one of the contracts in the two-contract defense theory. We reject Mr. Charles's position that additional documentation is required regarding who, what, when, and price when the MSA is invoked as a contract. The MSA states:

> BLUE FIN is engaged in the business of performing oilfield services and in the course of such activity, regularly and customarily enters into contracts with companies and individuals to perform work and/or provide services, equipment, machinery, materials or supplies, all of which is defined to be the Work ('Work').

The MSA goes on to discuss the Work throughout the contract including in paragraph three entitled "Performance of the Work." Plaintiff also contends that the

MSA does not obligate Tucker to hire from Blue Fin or for Blue Fin to accept the work. While true, in the present case, it is clear that Tucker did hire Blue Fin and Blue Fin did accept the work. In so doing, the MSA served as the binding document between the parties. This argument has no merit.

Mr. Charles next argues that the scope of the work contemplated by Tucker and Blue Fin is too ambiguous. Specifically, he contends the MSA states that Blue Fin is in the business of "performing oilfield services," and it does not utilize the words "hydrotesting," pipelines," or "water." Mr. Charles maintains that this is fatal to Defendants' claims that they are the statutory employers of Mr. Charles because there is ambiguity as to whether the hydrotesting performed by Blue Fin is considered "oilfield services." Further, Mr. Charles notes that in a previously filed motion for summary judgment, Tucker argued that the Williams-Tucker contract met the definition of a construction contract under the Louisiana Anti-Indemnity Act (LAIA). This runs counter to Tucker's claim in its current motion for summary judgment that the MSA is an oilfield services contract, according to Mr. Charles. He argues that this discrepancy creates a genuine issue of material fact as to whether Mr. Charles was providing oilfield services or construction services on the day of the accident.

In support of his argument, Mr. Charles cites *LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc.*, 16-71 (La.App. 3 Cir. 8/17/16), 200 So.3d 939, *writ denied*, 16-1684 (La. 11/29/16), 210 So.3d 804, for the proposition that the scope of the work must be more detailed. In *LFI Fort Pierce, Inc.*, the plaintiff was operating a scissor-lift on a construction site when an accident occurred. The plaintiff was a direct employee of LFI, a temporary staffing company who provides workers for lease to other companies. Acme was a subcontractor on the construction site, performing

10

work for the general contractor CC & D. Acme had contracted with LFI for temporary labor in furtherance of its contract with CC & D. As a result of the accident, LFI and its workers' compensation insurer paid workers' compensation benefits to the plaintiff. LFI and its insurer then filed a petition for damages against Acme and its insurer for reimbursement of the benefits paid to the plaintiff. The defendants filed a motion for summary judgment, arguing that Acme is the statutory employer of the plaintiff, and, therefore, they are immune from tort liability arising out of this accident. The trial court agreed with the defendants and dismissed the claims against them. LFI and its insurer appealed.

LFI and its insurer asserted that there were genuine issues of material fact regarding Acme's statutory employer status. The appellate court first looked at the contracts between the parties. There was no written contract between CC & D and Acme.

In order to establish a contract, the appellate court looked at the evidence submitted by Acme, which included excerpts from a deposition with an Acme representative and a purchase order. The representative stated that the agreement between CC & D did not discuss whether temporary labor would be used, but Acme knew that it would need to hire additional labor in order to complete the work. Next, the appellate court looked at the contract between Acme and LFI. This contract was evidenced by a credit application and a work order ticket. It "stated that LFI is a 'Temporary Employment Service, which hires its own employees and assigns them to customers to support or supplement the customer's work force.'" *Id*. at 947. Nothing in this contract specified that it was "for the performance of any of the jobs or services that Acme had contracted with CC & D to provide." *Id.* The appellate court found "that the contract between CC & D and Acme is ambiguous as to

whether or not it included or contemplated the services or work that LFI provided to Acme (i.e. temporary labor)." *Id.* Therefore, they found that genuine issues of material fact existed as to whether Acme was the statutory employer of the plaintiff.

*LFI Fort Pierce, Inc.* is distinguishable from the case before us. LFI was providing general laborers to Acme, rather than specialized workers. The contract between LFI and Acme was a general contract that could have applied to any trade or business. In the present case, the Williams-Tucker contract is entitled "FACILITY MOIDIFICATIONS AND INTEGRITY ASSESSMENT HYDROTEST." Tucker utilized the Blue Fin MSA in furtherance of its contract with Williams for hydrotesting, amongst other things. Blue Fin then hired Hydrochem, who is in the business of hauling water to jobsites for hydrotesting. We find that this direct line of contracts is not ambiguous. The contracts were clearly entered into in the furtherance of the Williams-Tucker contract for hydrotesting at the Station 54 facility.

Additionally, the court in *LFI Fort Pierce, Inc.* found genuine issues of material facts existed because the CC & D contract with Acme was ambiguous as to whether temporary labor would be used. In the present case, the Tucker-Blue Fin MSA contemplated Blue Fin's use of a third party to complete the work it was hired to do. There is specific language included in the MSA about Blue Fin's statutory employer status, which can only be applicable if Blue Fin hired a third party to complete the work. We find *LFI Fort Pierce, Inc.* inapplicable to the case at bar.

We disagree with Charles's argument that, because Tucker argued in a previous motion that the Williams-Tucker contract is a construction contract for the purposes of the LAIA, Tucker cannot now argue that it is an oilfield services contract. The title of the contract explains that it was entered into for the purpose of facility

12

modifications (construction contract) and hydrotesting (oilfield services contract). There is no reason given by Mr. Charles as to why the contract must be regarded as one or the other, and we can think of none. For the reasons stated above, we do not find that the scope of the work contemplated by Tucker and Blue Fin is ambiguous.

Finally, Mr. Charles argues that the second contract in the two-contract theory is missing, and consequently, Tucker is barred from invoking the two-contract theory. The second contract to which Mr. Charles is referring is the contract between Blue Fin and Hydrochem. It is undisputed that a written contract does not exist between these two parties. However, there is no requirement that the contracts used to satisfy the two-contract theory must be in writing. See *Rasmussen v. Mann's Const. Co.*, 08-987 (La.App. 3 Cir. 2/4/09)(2009 WL 250905)(unpublished opinion).

Again, Mr. Charles relies on *LFI Fort Pierce, Inc.*, this time for the proposition that Tucker has not provided proper documentation to prove a second contract exists. Mr. Charles states in brief that the court in *LFI Fort Pierce, Inc.* found "that given the type of documents offered and the testimony presented to the Court, there was a genuine issue of material fact and summary judgment was not appropriate." This is a misrepresentation of the holding. In fact, the court explains that Acme submitted deposition testimony and a purchase order in order to establish a contract between CC & D and Acme. The appellate court does not state that this evidence is insufficient. Rather, the court stated "that the **contract between CC & D and Acme** is ambiguous[.]" *LFI Fort Pierce, Inc.*, 200 So.3d at 947 (emphasis added). Clearly, the court found that a contract did exist but found summary judgment was inappropriate on other grounds that we have already stated do not apply to this case.

13

In the present case, similar evidence was presented to establish a contract between Blue Fin and Hydrochem. This evidence included the deposition testimony of Victor Russell, Blue Fin's project manager, emails regarding the starting date and cost of the work, and waybills and purchase orders about specific loads of water hauled. We find this evidence sufficiently establishes a contract between Blue Fin and Hydrochem.

After reviewing the contracts, evidence and law related to this case, we find that the requirements of the two-contract defense have been satisfied, and Tucker is the statutory employer of Mr. Charles. It follows that Williams is also the statutory employer of Mr. Charles since Williams is a principal that entered into a written contract with Tucker, who we have determined to be Mr. Charles's statutory employer. La.R.S. 23:1061(A)(3).

## DECREE

The judgments of the trial court are affirmed. Costs of this appeal are assessed to Luther Charles.

**AFFIRMED.**